MONCURE, P..
delivered the opinion of the court. Afterstatingthecaseheproceeded:
The only question of controversy in this case is, whether the policy is void by reason of the failure of the insured to pay the amount of the second and last assessment on his premium note; as required by the board of directors, of the company?
*There is no question whatever but that, by the express terms of the policy, it was stipulated and agreed by and between the parties thereto, that in case of loss or damage by fire or lighting to the property therein insured, and the note given for the cash premium or any part thereof, or any assessment or assessments on the pre *591 mium note of the assured shall remain unpaid and past due at the time of such loss or damage, the said policy shall be void and of no effect; and that, by the express language of the application on which said policy was issued, which said application was subscribed by the plaintiff, James S. Taylor, the applicant, it was agreed by and between the parties, that in case of loss or damage by fire or lightning to the said property, and the note given for the cash premium or any part thereof, or any assessment as aforesaid shall remain unpaid and past due at the time of such loss or damage, the said policy shall be void and of no effect.
Nor is there any question whatever but that, by a resolution of the board of directors of said company held October 10th, 1873, it was, among other things, resolved, that a second and further assessment of twenty-five per cent, was made on the said plaintiff’s deposit note of one hundred and ten dollars; that on the 25th day of May, 1874, a letter was addressed and sent by the secretary of said company to the said plaintiff, James S. Taylor, at Gogginsville, enclosing a copy of the said resolution and other proceedings of the said board, the commencement of which letter was in these words: “In accordance with the resolutions appended, you are requested and required to remit to this office (of Southern Mutual Insurance Comp’y, No. 11, Main street, Richmond, Va.,) $27.50. net amount levied by second assessment on your deposit note. No. 5014, given for policy of same number for $110. Please remit *by check, draft, postal order, registered letter or express, prepaid, and receipt therefor will be forwarded to you;” in which letter also were included these words: “your attention is hereby called to the following provisions of the charier and conditions of your policy: then followed copies of sections 5 and 6 of the charter, and that condition of the policy which declares as aforesaid that, “it is hereby expressly stipulated and agreed by and between the parties,_ that in case of loss or damages by fire or lightning to the property hereby insured, and the note given for the cash premium or any part thereof, or any assessment or assessments on the premium note of the assured, shall remain unpaid and past due at the time of such loss or damage, this policy shall be void and of no effect;” and the conclusion of which letter was in these words: “to avoid the penalties above set forth you are advised and requested to remit at once the amount required of you. No agent is authorized to collect any assessment except on receipt signed by the secretary.”
Nor is there any question but that the said letter was duly received by the said Taylor, and that he did not comply with the request therein contained; his testimony before the jury on that subject being in these words: “I received it (the letter aforesaid) by due course of mail. More than 30 days elapsed after I received the notice before my house was burned. I never did pay the amount of this assssment. I did not offer to pay it at any time within thirty days after I received the notice of the assessment.”
Nor is there any question but that the said Taylor was fully informed that it was the duty of the board of directors to make assessments on the deposit notes of the insured to meet the expenses and losses of the company; that two such assessments had been so made on the said note of the said Taylor, one of which ^assessments had been actually paid by him, and the other had never been objected to by him before the institution of this suit; but on the contrary he had always before that time assented to its binding obligation on him, and been willing to pay it; a letter having been written at his request, on the 8th day of July, 1874, by G. H. T. Greer, cashier of the Rranklin ; bank, Rocky Mount, Va., to the Southern ' Mutual Insurance Company, Richmond, Va., which letter was read in evidence to the jury on the trial of this cause, and is in the words and figures following, to wit:
“Dear Sir:
“At request of Mr. James S. Taylor, I enclose check on Planter’s Nat. Bank for $30, to pay assessment on his policy. In doing so, I have to say that Mr. Taylor’s house was burned on the 5th instant, but I hope that the payment of the amount of assessment, even at this time, will be all right, as the company loses nothing thereby, as it had the payment of the premiums perfectly assured, and by the payment of the amount above, it gets all it could have gotten. Mr. Taylor’s failure to pay sooner, was pure negligence, as he is a man of property, but engrossed in farming forgot to pay. He does not know the exact amount of the assessment, but I suppose the $30 will be enough. Please answer as soon as possible.
“Very resp’y,
G. H. T. Greer. Cas.”
The company refused to receive the money thus sent to it, and insisted that the said policy had become void and of no effect by the default of the said Taylor in complying with its terms and conditions, and refused to pay to him the amount of the insurance or any part ^thereof. He therefore brought this action to recover the same.
The case was tried upon the general issue. There was a demurrer to the evidence by the defendant, in which the plaintiff joined. The jury found a conditional verdict, in the usual form in such cases; and the court rendered judgment thereon in favor of the plaintiff, for the amount of the insurance with interest and costs.
Is there any error or not in that judgment? Whether there be or not depends upon whether the second assessment of twenty-five per centum, made by the board of directors on the plaintiff’s premium note of one hundred and ten dollars, in the payment of which assessment default was made by him, was made by the said board fraudulently or not; or with or without power to make it; and whether the fact so appears in the record?
If it appear in the record that the said assessment was made by the said board fraudulently, or without power to make it, then *592 there is no error in the judgment, and it must be affirmed. But if it do not so appear, then there is error in the said judgment, and the same must be reversed.
The court is of opinion that it does not so appear, and therefore that the judgment must be reversed and. judgment rendered for the defendant upon the demurrer and evidence.
There is not a particle of evidence in the record tending to show that there was any fraud on the part of the said board of directors or any of them in-making the said assessment. The board which made it consisted, of W. C. Carrington, president, and Dr. H. G. Davidson, J. H. Martin, Dr. J. G. Cabell, Dr. Hunter McGuire, and the secretary. ' They constituted the board on the l'Oth day of October, 1873, when the. said *se'cond assessment was originally made; and also on the 7th day of February, 1874, when the order previously made on the subject was altered and amended. If it be proper for us to speak from our personal knowledge of the character of these gentlemen, we might express the opinion that they were incapable of acting fraudulently as members of the said board. Nor does it appear from the record that the said assessment was improperly made, or made when there was no occasion therefor, in the execution of the purposes for which the said company was chartered and organized.
The company was a “Mutual Insurance' Company,” composed of the insured themselves, each one of whom was a member of the company. The directors are the representatives of the members of the company, being elected by them. The presumption therefore is, in the absence of evidence to the contrary, that the acts of the board of directors are free from any just ground of objection.
The property in this case was insured for the sum of $3,300; two thousand being forthe building and two hundred for the piano. The .judgment recovered was for the whole sum, with interest and costs. The insurance was on the 1st day of March, 1871, and for five years therefrom. The insured understood perfectly the charter of the company and the terms of the pqlicy of insurance and the conditions thereto annexed. He made no objection to any of them, but elected to have his property insured by that company, and thus to become a member of it. The consideration of the insurance was. the payment of a policy fee of $3.50, and a cash premium of $44, and the execution and delivery of a deposit note for $110, which was subject to the assessments of the board of directors to meet the losses and expenses; any surplus of which that *might remain at the expiration of the term of the insurance was to be returned to the insured. One assessment was after-wards made and paid, being 25 per centum of the deposit note, amounting to $27.50. Another assessment of the same amount was afterwards made by the board, of directors, of which due notice was given to the assured, who made not the slightest objection thereto, but failed' to pay it in due time, though he was warned in writing by the secretary of the company at the time of making the demand, of the consequences of default. After setting forth all the particulars of the demand in the body of his letter, the secretary thus concludes it: “To avoid the penalties above set forth, you are advised and requested to remit at once the amount required of you,” &c. .Notwithstanding which he failed to remit it, and even failed to make any reply, written or oral, to the demand. Had he complied with the request and paid the second assessment, his whole payments on account of the insurance would together have amounted to about one hundred dollars; in consideration of which he would at once have received the whole amount insured, two thousand two hundred dollars. After the loss of the property insured, he offered to pay the amount of the second assessment, and in the letter of Mr. Greer enclosing a check for the money, he said: “Mr. Taylor’s failure to pay sooner was pure negligence, as he is a man of property, but engrossed in farming forgot to pay.” The compan3r refused then to accept the payment and insisted that the policy had, by its express terms, become void and of no effect, by the failure of the insured to pay in due time.
The present suit was therefore then brought by the insured against the company; and was brought not in the city of Richmond where the company was located, and where all their books were, and where they transacted *all their business, but in the distant county of Franklin, the place of residence of the insured, in which by law, the action could be brought. In that action the assured, for the first time, raised the objection that the assessment was not duly made; that there was no occasion for it to raise the means for payment of the losses and expenses of the company; and raised it under the general issue. He might at any time, if he had any doubt about the correctness of the assessment, have called at the office of the company in Richmond, examined their books and papers, and satisfied himself therefrom, and from explanation, if necessary, by the officers of the company, of the correctness of the assessment. But he failed to do so; and the company could not of course carry all their books and papers from Richmond to Franklin county, and produce them on the trial, with somebody to explain them — and all this for the purpose of showing their right to the amount of the second asse.ss.ment of $37.50. There were two trials of the case. On the first there was a hung jury — on the second there was a verdict for the plaintiff; or rather a special verdict, on which judgment was ultimately rendered for the plaintiff, arid that is the judgment to which the writ of error in this case was awarded.
A great many books and cases were referred to by the learned counsel in the'argument of the case before this court, which or most of which we have examined; but we do not deem it necessary to notice them in detail in this opinion. There are few or no *593 cases on the subject in this court, and those decided by the courts of other States, are generally affected, more or less, by the legislation of the States in which they occurred. It is perhaps enough to say on this subject, that we have seen no case which can be considered as authority in conflict with the foregoing opinion, or any *part thereof. We are therefore for reversing the judgment of the court below, as before stated.
ANDERSON, J., was not prepared to concur in or dissent from the opinion of Moncure. P.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said judgment is erroneous. Therefore it is considered that the same be reversed and annulled, and that the plaintiff in error recover against the defendant in error its costs by it expended in the prosecution of its super-sedeas aforesaid here; and this court proceeding- to give such judgment as the said circuit court ought to have given, is further of opinion that the law arising upon the plaintiff’s demurrer to the defendant’s evidence is for the plaintiff, and that the said evidence is not sufficient in law to maintain the issue joined on the part of the defendant. Therefore it is further considered that the defendant take nothing by his bill; that the plaintiff go thereof without day and recover against the defendant in error (the plaintiff in the court below) its costs by it. about its defence in the said circuit court expended.
Judgment reversed.